| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-BK-50098 |
| | ) | |
| TODD C. LAWRENCE | ) | |
| | ) | CHAPTER 7 |
| | ) | |
| | ) | |
| Debtor | ) | JUDGE: KOSCHIK |

## MOTION IN OPPOSITION TO CREDITORS MOTION FOR RELIEF FROM STAY

Now comes Debtor Todd Lawrence, by and through counsel, who humbly requests this Court deny the creditor, Nationstar Mortgage dba Mr. Cooper ("Mr. Cooper"), relief from the §362 Automatic Stay set in place upon the bankruptcy filing. The purpose of this Stay is to give the debtor a time of relief from aggressive creditors, and is designed by Congress to be an almost insurmountable obstacle protecting the debtor while the bankruptcy estate is open. Todd Lawrence needs this protection, especially from an aggressive creditor like Mr. Cooper. A Memorandum in support is attached to this Motion.

Respectfully Submitted,

/s/ Mark Graziani

Mark F. Graziani #0092927
P.O. Box 1158
Norton, OH 44203
(330) 571-3350 (cell)
mark_graziani@yahoo.com
Attorney for Todd Lawrence

1

## MEMORANDUM IN SUPPORT

The beleaguered debtor, Todd Lawrence, humbly requests this Court deny the creditor's Motion for Relief from the Automatic Stay. The ink was barely dry on Todd Lawrence's bankruptcy petition when the creditor, Mr. Cooper, filed for Relief from the Stay in order to immediately resume the foreclosure action against the real property at 90 South River Road, Munroe Falls. [Summit County CV 2018-12-5082]. This premature, aggressive move by the creditor is contrary to the purpose for the Stay, which was intentionally designed by Congress to allow the debtor time to restructure his finances and resume making payments on property he intends to keep. Furthermore, as explained below, lifting the Stay and allowing Mr. Cooper's impatience to reign will prove to be highly detrimental to Mr. Cooper itself, who will blindly rush into a large financial loss should the property sell at Sheriff's sale for 2/3 of its appraised value. Lastly, Mr. Cooper's Loss Mitigation Department has been sending correspondence and documents to debtor's counsel so that Todd Lawrence can ultimately save his home from foreclosure, and it seems highly disingenuous and schizophrenic to the debtor that Mr. Cooper's Loss Mitigation Department is trying to work out a satisfactory agreement to save his home while the Mr. Cooper's counsel is aggressively trying to take his home through foreclosure. For the reasons outlined below, debtor Todd Lawrence requests this Court deny the creditor's Motion for Relief from the Automatic Stay, which will allow Todd Lawrence the needed time to restructure his finances and resume making his house payments to Mr. Cooper.

**Facts of the Case**

1. Todd Lawrence is the owner of real property at 90 South River Road. He lives there with his girlfriend and their five young children.

2. In November, 2018, Todd Lawrence broke his ankle on the job and has required numerous surgeries and pins to be installed in his leg bones. It was a severe and ghastly injury.

3. Because of his injury, Todd Lawrence has not worked since the accident, and has produced no income since that time. He has applied for Worker's Comp relief but, as of this writing, it has not been fully processed yet.

4. The Worker's Comp relief, when approved, will pay him for the past months of missed work. This money will be used to pay secured creditors what they are due.

5. Now, two-and-a-half months after the injury, Todd Lawrence's ankle is almost healed and he will be returning to work at the end of February.

6. As stated in Mr. Cooper's Motion, the principal due on Todd Lawrence's mortgage is $133,839.98, while the property is valued at $127,150.00.

7. Also as stated in the Motion, Todd Lawrence is $6,155.64 behind in his mortgage, having not made a payment since August, 2018.

8. On December 12, 2108, Mr. Cooper filed for foreclosure on the property in Summit County.

9. On January 18, 2019, Todd Lawrence filed a voluntary Chapter 7, which scheduled the §341 meeting for March 19, 2019.

10. Ten days after filing, on January 28, 2019, Mr. Cooper moved the Court for Relief from the Stay set in place on January 18, 2019. If granted, this Relief will allow the foreclosure action to proceed uninhibited.

11. On January 30, 2019, Summit County stayed all proceedings in the foreclosure case due to the bankruptcy filing.

3

**Analysis:**

12. In <u>In Re: Oldham v. Heights Finance Corp.</u>, the court discussed how fundamental the automatic stay is in bankruptcy:

> As Congress has stated: The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collections efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. ¶6, Case No. 04-41692, U.S. Bankruptcy Court, S.D. Illinois (2006).

As the court pointed out in <u>Oldham</u>, the stay permits the debtor to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy. Yet, attempts at repayment and/or financial reorganization take time, especially working with an out-of-state creditor where everything is sent through the mail. Mr. Cooper's rush to return to the foreclosure appears to want to deprive Todd Lawrence of the time he needs for correcting his mortgage arrearage, which is directly at odds with Congress's intent in creating the Stay.

13. Todd Lawrence does not wish to beleaguer the point. When the petition is filed, the §341 meeting is automatically scheduled eight weeks later. This hearing is an opportunity for creditors to express their opinions or frustrations to the trustee. Then, under §4008, all reaffirmation agreements must be filed within the 60 days that follow the §341 meeting.

14. These two time frames together amount to a period of approximately 116 days from the date of filing to the last day to reaffirm any debts under §4008. This intentional time frame, designed by Congress, gives the debtor the time and opportunity to restructure his finances, make current any past-due payments, enjoy temporary relief from the pressures of aggressive creditors, and resume working again after his ankle becomes fully healed. Yet, Mr. Cooper's rush to return to

4

the foreclosure, filed a mere 10 days after the petition, seeks to rob Todd Lawrence of Congress's relief for the financial problems that drove him into bankruptcy and the opportunity to make things right with his secured creditors.

15. If the Stay is lifted, Mr. Cooper will immediately resume the foreclosure action in Summit County. By rushing into this foreclosure, Mr. Cooper will not only rob Todd Lawrence of Congress's stated protection under §362, but the creditor will also realize a huge loss on the property when it eventually sells at the Sheriff's sale.

16. As correctly stated by Mr. Cooper, the current principal due is $133,839.98, while the property is valued at $127,150.00. When a foreclosed-upon property is listed for Sheriff's sale, it is listed at 2/3 its appraised value. Here, that listing value would be $84,766.67. Almost always, the properties sell for the 2/3 asking price.

17. If Todd Lawrence's home is sold at Sheriff's sale, Mr. Cooper would immediately realize a loss of $49,073.31, not counting the attorneys fees and costs it incurred while prosecuting the matter in Summit County and this Court. Its total loss would be over $50,000. This is what Mr. Cooper's impatience will reap for the company.

18. Even though Todd Lawrence is $6,155.64 behind in his mortgage, he is incredulous that Mr. Cooper would *choose* to impetuously rush into a loss of over $50,000 rather than allow him the time Congress intended to attempt a repayment plan. To him, solving a $6,155.64 problem and his home is far wiser for both parties than for Mr. Cooper to take a $50,000 loss, after which Todd Lawrence would have to move his family of seven into a new home. Mr. Cooper's rush to get back into the foreclosure just doesn't make any sense at all.

19. Moreover, Mr. Cooper's Loss Mitigation Department understands what a successful foreclosure means – immediately realizing a more-than $50,000.00 loss on its books when the

property is sold by the Sheriff. This runs counter to the department's stated purpose; it exists to *mitigate loss* so, by definition, taking an immediate $50,000 loss is an abject failure on its part. By allowing Todd Lawrence time to resume making payments, Mr. Cooper will eventually be made whole; this is the best way to mitigate the loss – by not having a loss in the first place.

20. Mr. Cooper has recently been sending loss mitigation paperwork to counsel so that Todd Lawrence can reaffirm the mortgage debt and save his home. He fully intends to do so and, under §4008, has until May 18, 2019, to file the reaffirmation agreement. However, this process only very recently started and takes time, and Todd Lawrence is not interested in working together with Mr. Cooper's Loss Mitigation Department while simultaneously fighting off Mr. Cooper's aggressive counsel in Summit County. Taken together, counsel seems to be acting counter to his own client's best interests by rushing Mr. Cooper into a loss of over $50,000.00.

21. Todd Lawrence wants to save his home for his family of seven, and intends to do so. Mr. Cooper Loss Mitigation Department wants him to save his home and to keep making mortgage payments, and not precipitate a $50,000 loss on the company. Neither party wants to realize the respective losses that occur when the property is sold in foreclosure. Yet, despite all this, Mr. Cooper's counsel appears to desire such losses for both parties, an end result that makes sense to no one.

22. The bottom line is that Todd Lawrence wants to keep his home for his family. He intends to do so by bringing his mortgage arrearage up to date by returning to work with his healed ankle, but he needs the time to do so. By Congress's intent, he has 116 days from January 18, 2019, to solve these problems, unless Mr. Cooper is successful in avoiding the Automatic Stay under §362.

6

23. Mr. Cooper will not be detrimentally affected by being deprived of the Relief from Stay; their position as secured creditor will not suffer by waiting and giving Todd Lawrence time to pay off the arrearage. In fact, Mr. Cooper will only likely benefit by being patient, by foregoing the inevitable loss that will occur if the property is sold at auction.

***

Todd Lawrence humbly request this Court deny Mr. Cooper's Motion for Relief from Stay, because the alternative will accelerate the foreclosure and subsequent Sheriff's sale of his home. Mr. Cooper's impatient desire to return to the foreclosure will prove to be financially detrimental to the company and runs counter to Congress's intent in creating the Stay in the first place. The time frames within the bankruptcy code afford a debtor leave to restructure his finances and make arrearage payments, a mutually-beneficial result not available when the Stay is lifted shortly after filing by an impatient creditor. In this case, both parties can only stand to lose, and lose big, if Mr. Cooper is granted Relief from the Automatic Stay under §362.

Respectfully Submitted,

_____
Mark F. Graziani #0092927
P.O. Box 1158
Norton, OH 44203
(330) 571-3350 (cell)
mark_graziani@yahoo.com
Attorney for Todd Lawrence

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of Debtor's Motion in Opposition to Creditor's Motion for Relief from Stay was served by the N.D. of Ohio's electronic system upon the address of attorney Chris Manolis, Shapiro, Van Ess, Phillips & Barragate, LLP, 1100 Superior Avenue, Suite 950, Cleveland, OH 44114, on February 5, 2019.

/s/ Mark F. Graziani

Mark F. Graziani #0092927
Graziani Law, LLC
P.O. Box 1158
Norton, OH 44203
(330) 571-3350 (cell)
mark_graziani@yahoo.com

Attorney for Todd Lawrence